IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| MILTON STREET, SR., et al. | : | NO. 06-659-1 |
| | : | |

MEMORANDUM

Legrome Davis, J.                                                                      October 9, 2008

      Presently before this Court is the Omnibus Motion for Stay of Sentence Pending Appeal and Motion for a New Trial (Doc. No. 128) filed by Milton Street, Sr. ("the Defendant" or "Street") and the Government's response thereto (Doc. No. 129). Oral argument was held prior to the sentencing hearing conducted on September 26, 2008, and we denied the Defendant's Omnibus Motion. This Memorandum further explains our rationale.

      On November 28, 2008, the Defendant was indicted by the grand jury on eleven charges. Counts 8, 9, and 10 of the indictment charged failure to make an income tax return in violation of Title 26, United States Code, Section 7203. After trial, the jury returned a verdict convicting the Defendant of Counts 8, 9, and 10, and these are the only counts at issue here. Count 8 was based on the Defendant's failure to file a return for the tax year 2002, Count 9 was based on his failure to file for 2003, and Count 10 was based on his failure to file for 2004. We do not need to include a lengthy factual discussion because the Defendant admitted that he did not file returns for the tax years at issue. However, the Defendant did argue that he was not required to pay his taxes by filing IRS Form 1040A. The Defendant testified that his belief developed after he

researched the Paperwork Reduction Act, 44 U.S.C. §§ 3501-21.  The Defendant explained at trial that "if the IRS Form 1040 does not have a [Office of Management and Budget] control number . . . that is valid, then you're not required to supply the information."  (Trial Tr. 85:12-14, Feb. 14, 2008.)  The Defendant continued to explain as follows:

> [W]hen I pulled out the Paperwork Reduction Act, what I found was that, in order for the OMB number to be valid, . . . it had to have a statutory requirement in the package that was submitted to the Office of Business and Management. . . .  And then I went to the IRS Code 26 to see if I could find the statutory requirement, the statutory requirement that authorized the IRS to levy and collect a direct tax on the American people's labor and I couldn't find it. . . .  There is no law that I have been able to discover and that I have been able to find . . . authorizing the IRS to collect a direct unapportioned income tax on the American people and, if you bring that in here we don't have to go through all this, I'll plead guilty today, right now.

(Id. 85:16-87:1.)

I.  Stay of Sentence Pending Appeal

The Defendant moves this Court for bail pending appeal.  In order to meet his burden, the Defendant must prove to the Court: (1) that he is not likely to flee or pose a danger to the safety of any other person or the community if released; (2) that the appeal is not for the purpose of delay; (3) that the appeal raises a substantial question of law or fact; and (4) that if the substantial question is determined favorably to the Defendant on appeal, that decision is likely to result in reversal or order for a new trial on all counts for which imprisonment has been imposed.  United States v. Miller, 753 F.2d 19, 24 (3d Cir. 1984) (citing 18 U.S.C. § 3143).  A substantial question is one which is significant and novel, not governed by controlling precedent, or fairly doubtful.  United States v. Smith, 793 F.2d 85, 88 (3d Cir. 1985).  "Clearly, an issue that is 'patently without merit' cannot qualify as significant."  Id. at 89.  We do not find that the Defendant is a

flight risk or a danger to others.  Nor do we find that the Defendant's appeal is for the purpose of delay.  However, as discussed below, none of the Defendant's arguments raise substantial questions.  In fact, each of the Defendant's arguments is "patently without merit."  We therefore deny the Defendant's Motion for Stay of Sentence Pending Appeal.

II. Rule 33 Motions

The Defendant moves for a new trial pursuant to Rule 33 asserting the following complaints:  (1) the Court's ruling quashing certain subpoenas compromised the defense and violated due process and the Sixth Amendment right to call witnesses; (2) the jury instruction on willfulness constructively amended the indictment and prejudiced the defendant; (3) the jury instruction on willfulness was erroneous and prejudiced the defendant; and (4) the evidence presented by the Government was insufficient to support a finding of willfulness.

A. Standard

Under Federal Rule of Criminal Procedure 33, "the court may vacate any judgment and grant a new trial if the interest of justice so requires."  A new trial may be granted if the verdict is against the weight of the evidence, United States v. Brown, 1991 WL 7378 *4 (E.D. Pa. 1991), or if there is newly discovered evidence.  United States v. Cimera, 459 F.3d 452, 458 (3d Cir. 2006).  "Other grounds for granting a new trial, if they constitute errors of sufficient magnitude, may include denial of a separate trial sought under Federal Rule of Criminal Procedure 14; admission of improper evidence; and erroneous jury instructions."  United States v. Brown, 1991 WL 7378 *4 (E.D. Pa. 1991) (quoting Wright, Federal Practice and Procedure: Criminal 2d § 556 (1982 & 1990 Supp.)).

In the Third Circuit, the grant of a new trial under Rule 33 is uncommon.  United States

v. Brennan, 326 F.3d 176 (3d Cir. 2003); Government of Virgin Islands v. Derricks, 810 F.2d 50, 55 (3d Cir. 1987). New trials should be granted "sparingly and only in exceptional cases." Derricks, 810 F.2d at 55. District courts are constrained by the harmless error provision of Federal Rule of Criminal Procedure 52 and cannot grant a new trial unless the defendant's substantial rights were affected. United States v. Brown, 1991 WL 7378 *5 (E.D. Pa. 1991).

      B. The Compulsory Process Clause

A "criminal defendant has broad rights concerning the production of evidence," but "this right to present evidence is not absolute." United States v. Cruz-Jiminez, 977 F.2d 95, 100 (3d Cir. 1992). In order to establish that a limitation on the right to present a witness rises to the level of a constitutional violation, a defendant must meet the following three-prong test established by the Third Circuit: "[f]irst, that [the defendant] was deprived of the opportunity to present evidence in his favor; second, that the excluded testimony would have been material and favorable to his defense; and third, that the deprivation was arbitrary or disproportionate to any legitimate evidentiary or procedural purpose." Gov't of Virgin Islands v. Mills, 956 F.2d 443, 446 (3d Cir. 1992). In applying the second prong, the Third Circuit has held that evidence is material "'only if there is a reasonable likelihood that the testimony could have affected the judgment of the trier of fact.'" Id. (quoting United States v. Valenzuela-Bernal, 458 U.S. 858, 874 (1982)). Further, a "reasonable likelihood" is a "'probability sufficient to undermine confidence in the outcome.'" Id. (quoting United States v. Bagley, 473 U.S. 667, 682 (1985)). Applying this three-prong test to the present case, we reject the Defendant's argument that this Court's ruling at trial violated the Compulsory Process Clause of the Sixth Amendment and the

Due Process Clause of the Fourteenth Amendment.[1]

A defendant's right to produce evidence under the Sixth Amendment "is clearly subject to the rules of evidence." United States v. Briston, 192 Fed. Appx. 84, 89 (3d Cir. 2006) (citing Bronshtein v. Horn, 404 F.3d 700, 729 (3d Cir. 2005)). Here, the Defendant subpoenaed witnesses from the Office of Management and Budget ("OMB") and the Internal Revenue Service ("IRS"). At trial, defense counsel clearly stated that the underlying basis for the subpoenas was a defense based on the Paperwork Reduction Act:

> [The indictment states] that [the Defendant] had, by law, to file that form. We're talking about a piece of paper here. I mean, the Paperwork Reduction Act applies to paper. And if the Government crafted the indictment in such a way, we believe, that the defense . . . is entitled to say, well, you want me to file the form. The form needs to comply with the Paperwork Reduction Act.

(Trial Tr. 214:19-25 to 215:1, Feb. 12, 2008.) While the Government characterizes the defense as based on the argument that the Defendant believed he did not have to pay taxes, the Defendant's theory seems to actually be an argument that while he did have a duty to pay taxes, he did not have a duty to file IRS Form 1040A.[2] Either way, the Defendant's argument fails as a matter of law. The witnesses subpoenaed by the Defendant were not material, and our decision to quash the subpoena was not arbitrary. See United States v. Sarihifard, 155 F.3d 301, 309 (4th

---

[1] We need not separately address the Defendant's argument that our ruling also deprived him of due process of law. See Gov't of Virgin Islands v. Mills, 956 F.2d 443, 445 n.4 (3d Cir. 1992) (finding that "[t]here is apparently little, if any, difference" in the way the issue is analyzed under the two clauses); Pennsylvania v. Ritchie, 480 U.S. 39, 56 (1987) (stating that the Compulsory Process Clause "provides no greater protections . . . than those afforded by due process").

[2] The Defendant's argument clearly fails because he was not charged with failure to file a form; rather, he was charged with failure to "make an income tax return." (Doc. No. 1, p. 20-22.)

5

Cir. 1998) (holding that evidence supporting a meritless argument cannot be material); see also Fed. R. Evid. 401.

The Third Circuit, in a different context, has described an argument similar to the Defendant's as "frivolous and groundless." Barzeski v. C.I.R., 173 Fed. Appx. 175, 176 (3d Cir. 2006) (upholding Tax Court imposition of penalty for failure to file a tax return). In the words of Judge Easterbrook:

> How any of this could block a conviction for tax *evasion* is a mystery. . . . Th[e] crime does not depend on the contents of any form. Evading one's taxes is illegal independent of the information one does or does not supply. . . . The Paperwork Reduction Act does not change any substantive obligation.

United States v. Patridge, 507 F.3d 1092, 1094 (7th Cir. 2007). Appellate courts across the country have agreed. Salberg v. United States, 969 F.2d 379, 384 (7th Cir. 1992) ("[E]very court that has considered the argument that the regulations and the instruction books promulgated by the IRS are within the scope of the PRA has rejected it."); United States v. Hicks, 947 F.2d 1356, 1359-60 (9th Cir. 1991) (holding that the public protection provision of the PRA constitutes no defense to failure to file, and stating that the "PRA was not meant to provide criminals with an all-purpose escape hatch"); United States v. Kerwin, 945 F.2d 92, 92 (5th Cir. 1991) ("Paperwork Reduction Act does not apply to the statutory requirement that a taxpayer must file a return."); United States v. Dawes, 951 F.2d 1189, 1191-93 (10th Cir. 1991) (upholding determination that PRA did not shield taxpayers from a penalty for failure to file tax returns); United States v. Wunder, 919 F.2d 34, 38 (6th Cir. 1990) ("Defendant was not convicted of violating a regulation but of violating a statute which required him to file an income tax return. . . . The Paperwork Reduction Act therefore does not apply to the statutory requirement, but only to

the forms themselves . . . ."). It is therefore clear as a matter of law that the Paperwork Reduction Act provides no defense to the charges listed in Counts 8, 9, and 10 of the indictment. Evidence offered to support a legally baseless defense is not relevant or material, and, thus, the testimony that the Defendant hoped to obtain from the IRS and OMB witnesses was irrelevant and immaterial.

In the present Motion and at the sentencing hearing, defense counsel presented a new argument for the relevance of the IRS and OMB witnesses. He argued that the witnesses would have supported the defense position that the Defendant lacked the statutory requirement of willfulness. As an initial matter, this new argument for relevance changes nothing because the Defendant's argument still fails in light of the well established law cited above. In addition, by failing to raise this argument at trial, defense counsel failed to preserve this argument. See Fed. R. Evid. 103(a)(1); United States v. Iglesias, 535 F.3d 150, 158 (3d Cir. 2008) ("[A] party fails to preserve an evidentiary issue for appeal not only by failing to make a specific objection, . . . but also by making the *wrong* specific objection."). Thus, our review will be for plain error only. See United States v. Brink, 39 F.3d 419, 425 (3d Cir. 1994). "This rule gives the court the opportunity to correct any mistakes before charging the jury." Id. Under this standard, the proposed error must be "plain" and "affect substantial rights." Iglesias, 535 F.3d at 158. To be "plain," the error must be "clear" or "obvious." Id. In addition, an error affects "substantial rights" when "it is prejudicial, *i.e.*, it affect[s] the outcome of the . . . proceedings." Id.

Here, there was no error, and even if there were an error, any error is far from plain or obvious and would not have affected the outcome of the proceedings. First, the Defendant's good faith belief that he was not required to file IRS Form 1040A fails because he was charged

with "failure to make an income tax return" rather than failure to file a form. (Indictment, Doc. No. 1, pp. 19-22.) In addition, as discussed below, a determination of willfulness requires an inquiry into the Defendant's subjective intent. Defense counsel has made no proffer[3] as to how the testimony of the IRS and OMB witnesses would have provided evidence of the Defendant's honest beliefs. We cannot think of an explanation. Finally, during cross-examination, the Defendant actually discussed at length his beliefs regarding the Paperwork Reduction Act, (Trial Tr. 85:4-93:7, Feb. 14, 2008), and the jury nevertheless returned a guilty verdict on Counts 8, 9, and 10. We do not know what the IRS and OMB witnesses would have added to the Defendant's testimony that could have possibly led to a different verdict.

The Defendant seems to argue that his objection becomes more persuasive because "[o]n cross examination, the government proceeded to query into areas that elicited responses from Mr. Street that bore on the very witnesses the government successfully prevented from being called by the defense." (Def.'s Mot. 4.) We are still not persuaded. The Defendant did discuss the Paperwork Reduction Act during cross-examination. However, the Government did not raise the issue. The following exchange preceded the Defendant's discussion of the Paperwork Reduction Act:

> Government: And then you received your 2001 return and you reviewed it and believed that it reflected all of your income, including all of your consulting income?
> Defendant: I told Mr. Johnson not to file it.

---

[3]At the sentencing hearing, defense counsel argued that he could not disclose at trial the expected testimony of the IRS and OMB witnesses without "betraying" his defense. (Sentencing Tr. 11:8-25 to 15:1-2, Sept. 26, 2008.) At trial, defense counsel did not object to explaining the relevance of the expected testimony; rather, he made a different argument to support the relevance. If defense counsel were truly concerned about "betraying" his defense, he should have requested an *ex parte* hearing to determine relevance.

>Government: You told him not to file your 2001 return?
>Defendant: I told him not to file any of them.
>Government: You told him not to file any of your returns?
>Defendant: Yes.
>Government: And so it was on your direction that no returns were filed for '02, '03 and '04?

(Trial Tr. 84:19-85:3, Feb. 14, 2008.) The Defendant then began to discuss the Paperwork Reduction Act and he continued at length. The Government asked followup questions but clearly did not raise the issue. After the Government concluded its cross-examination, defense counsel made no effort to renew his argument regarding the relevance of the IRS and OMB witnesses. The Defendant cannot now claim that he was prejudiced by this exchange. The Defendant's motion for a new trial based upon our ruling quashing the subpoenas is denied.

    C. Constructive Amendment of the Indictment

A constructive amendment to an indictment constitutes a violation of the Fifth Amendment's Grand Jury Clause. United States v. Syme, 276 F.3d 131, 148 (3d Cir. 2002) (quoting United States v. Miller, 471 U.S. 130, 140 (1985)). An indictment is "constructively amended when evidence, arguments, or the district court's jury instructions effectively 'amend[s] the indictment by broadening the possible bases for conviction from that which appeared in the indictment.'" United States v. McKee, 506 F.3d 225, 229 (3d Cir. 2007) (quoting United States v. Lee, 359 F.3d 194, 208 (3d Cir. 2004)). Thus, "'[c]onvictions generally have been sustained as long as the proof upon which they are based corresponds to an offense that was clearly set out in the indictment.'" United States v. Asher, 854 F.2d 1483, 1498 (3d Cir. 1988) (quoting United States v. Miller, 471 U.S. 130, 136 (1985)).

We reject the Defendant's challenge. The Defendant claims that we constructively

amended the indictment by giving the following jury instruction:

> And in this particular area you may consider a pattern of filing income tax returns and then not filing income tax returns as evidence bearing upon the question of willfulness, because ultimately every single one of the offenses that I have described to you has a different form of mental intent, every single one of them has a mental intent that's involved.

(Trial Tr. 146:6-12, Feb. 19, 2008.)  The Defendant appears to argue that constructive amendment occurred because the indictment did not mention a "pattern of filing income tax returns and then not filing income tax returns."  As a preliminary matter, the challenge fails because the Defendant has failed to bring to our attention any offense for which he could have been convicted that was not charged in the indictment.  There is no risk that the Defendant was convicted of "filing income tax returns" since that conduct is obviously lawful.  And the rest of the conduct described—"and then not filing"—was the very conduct that formed the basis for Counts 8, 9, and 10.

In addition, the Defendant's challenge must fail because defense counsel did not object to this instruction at trial.  Under Federal Rule of Criminal Procedure 30, "[a] party who objects to any portion of the instructions or to a failure to give a requested instruction must inform the court of the specific objection and the grounds for the objection before the jury retires to deliberate."  Rule 30 continues, "[f]ailure to object in accordance with this rule precludes appellate review" except with regard to a plain error that affects substantial rights.  Without a clearly articulated objection, "a trial judge is not apprised sufficiently of the contested issue and the need to cure a potential error to avoid a new trial."  Gov't of Virgin Islands v. Knight, 989 F.2d 619, 631 (3d Cir. 1993).  Here, we gave both parties an opportunity to object to the jury instructions, and

defense counsel raised no objection.  (Trial Tr. 147:4-15, Feb. 19, 2008.)  Because Rule 30 allows for appellate consideration on a plain error standard nonetheless, we will review the merits of the objection.

The Defendant's challenge must fail because the instruction at issue did nothing more than point to proof that the jury might consider in determining whether the Government had established an offense clearly set forth in the indictment.  The jury instruction at issue was given to explain the element of willfulness that was common to Counts 8, 9, and 10.  Counts 8, 9, and 10 charged the Defendant with failure to file income tax returns.  Generally, "'a defendant's past taxpaying record is admissible to prove wilfulness circumstantially.'"  United States v. Ringwalt, 213 F. Supp. 2d 499, 506 (E.D. Pa. 2002) (quoting United States v. Bok, 156 F.3d 157, 165 (2d Cir. 1998)).  More specifically, it is well established that a pattern of filing returns and then failing to file is evidence of willfulness.  See United States v. Doan, 710 F.2d 124, 126 (3d Cir. 1983) (prior filings confirmed defendant's awareness that certain fees were income); United States v. Fingado, 934 F.2d 1163, 1168 (10th Cir. 1991) ("A pattern of filing and then failing to file is evidence of willfulness.").  In addition, it is equally well established that a pattern of failing to file tax returns over a period of several years may establish willfulness.  See United States v. Greenlee, 517 F.2d 899, 903 (3d Cir. 1975) (holding that "a two year pattern of derelictions in fulfilling defendant's obligation to make timely returns [was] itself indicative of the willfulness of his actions"); United States v. Litman, 246 F.2d 206, 208 (3d Cir. 1957) ("Such a pattern of behavior, as distinguished from a single occurrence, itself suggests willfulness."); United States v. Smith, 698 F. Supp. 589, 592-93 (E.D. Pa. 1988) ("A pattern of failing to file tax returns spanning several years is probative of the defendant's state of mind as to his intent or

willfulness to evade taxes in a particular year."). Thus, our instruction did not add a new basis for conviction to those that appeared in the indictment. The Defendant's motion for a new trial based upon constructive amendment of the indictment is denied.

      D.  Jury Instruction Regarding Willful Blindness

In determining whether a jury instruction was properly given, a court should examine the totality of the instructions and consider "whether, viewed in light of the evidence, the charge as a whole fairly and adequately submits the issues in the case to the jury." Bennis v. Gable, 823 F.2d 723, 727 (3d Cir. 1987). Reviewing courts consider the "'totality of the instructions and not a particular sentence or paragraph in isolation.'" United States v. Khorozian, 333 F.3d 498, 508 (3d Cir. 2003) (quoting United States v. Coyle, 63 F.3d 1239, 1245 (3d Cir. 1995)). Reversal is required where "the instruction was capable of confusing and thereby misleading the jury." Bennis, 823 F.2d at 727.

The Defendant's claim is based on our response to a question from the jury. The jury asked, "[I]f you don't believe you'd need to file taxes, is it willful not to file?" (Trial Tr. 3:15-16, Feb. 20, 2008.) As part of a longer explanation, we responded, "Willful blindness says you can't stick your head in the sand and ignore things that should be obvious to you." (Id. 7:4-5.) According to the Defendant, our instruction "leads the jury to believe that only an objectively reasonable misunderstanding of the law negates statutory wilfulness." (Def.'s Mot. 6.) As a preliminary matter, we gave both parties an opportunity to object to the jury instructions. (Trial Tr. 9:10-12, Feb. 20, 2008.) However, defense counsel admits that he did not object to this instruction at trial, and his objection is therefore waived. (Sentencing Tr. 20:7-21:13, Sept. 26, 2008.) Because Rule 30 allows for appellate consideration on a plain error standard nonetheless,

we will review the merits of the objection.

A willful blindness instruction "'must be tailored . . . to avoid the implication that a defendant may be convicted simply because he or she should have known of facts of which he or she was unaware.'" United States v. Wasserson, 418 F.3d 225, 237 (3d Cir. 2005) (quoting United States v. Wertz-Ruiz, 228 F.3d 250, 255 (3d Cir. 2000)). "'The instruction must make clear that the defendant himself was subjectively aware of the high probability of the fact in question, and not merely that a reasonable man would have been aware of the probability.'" Id. (quoting Wertz-Ruiz, 228 F.3d at 255). Although certain portions of the instructions do not mirror the exact language approved in Third Circuit precedent, when viewed as a whole, the instructions did properly emphasize the Defendant's subjective awareness rather than instructing an objective inquiry into reasonableness.

In the original charge, we instructed the jury that "the Government must prove beyond a reasonable doubt that the defendant had actual knowledge that the law imposed a duty on him to pay his taxes and that he voluntarily and intentionally violated that duty." (Trial Tr. 141:11-15, Feb. 19, 2008.) We continued by stating that "good faith exists if a defendant honestly believes that the law imposes no duty on him." (Id. 141:20-22.) We also told the jury that "[t]he element of willfulness actually exists in the tax law to protect the ordinary citizen from prosecution for innocent mistakes and filing returns that result from negligence or the complexity of the tax laws." (Id. 142:8-11.) In explaining willful blindness specifically, we instructed that a defendant cannot "escape liability simply by deliberately avoiding to learn about a duty." (Id. 142:17-18.) We continued, "You can't . . . turn your head or escape liability if you know there's a strong likelihood that you have a duty to pay taxes or you have a duty to state your income accurately."

(Id. 142:18-21.)  We clarified, "If a person honestly believes his or her position, then they are acting in good faith and that's not willful blindness."  (Id. 143:2-4.)  In order to avoid any confusion, we stated that "a defendant's conduct is not willful if it's the result of negligence, mistake, accident or a good-faith misunderstanding of the law."  (Id. 145:20-22.)

After the jury requested clarification, we continued to emphasize the importance of the Defendant's subjective awareness.  We stated, "[Y]ou've got to know that there's a responsibility and you've got to make a decision, an intelligent, conscious decision to violate that responsibility."  (Trial Tr. 4:22-25, Feb. 20, 2008.)  We continued, "[T]his means that the Government has to show, beyond a reasonable doubt, that the defendant had actual knowledge that the law imposed a duty on him to pay taxes."  (Id. 4:25 to 5:3.)  We also explained that "good faith means . . . that you honestly believed that the law didn't impose a duty on you."  (Id. 5:11-2.)  We cautioned the jury, "[A] good faith defense protects those who are ignorant of the law or those who misunderstand the law, but not simply those who disagree with the law."  (Id. 5:21-24.)  In specifically addressing willful blindness, we instructed the jury that "no one can ignore responsibility . . . by simply deliberately ignoring what is obvious."  (Id. 6:15-16.)  We also instructed the jury to look at "what is genuinely and truly held" and to look at "what [the Defendant's] legitimate beliefs are."  (Id. 6:22-24; see also id. 7:20-22 ("It is what does [the Defendant] genuinely believe.  Did the Government truly prove what his beliefs are or what his beliefs are not?").)  Thus, at no time did our instructions direct the jury to consider the objective reasonableness of the Defendant's beliefs.  Rather, from start to finish, our instructions emphasized the need to examine the subjective awareness of the Defendant.  The instructions were not capable of confusing the jury.  The Defendant's motion for a new trial based upon

14

erroneous jury instructions is denied.

       E.  The Weight of the Evidence

"A district court can order a new trial on the ground that the jury's verdict is contrary to the weight of the evidence only if it 'believes that there is a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted.'"  United States v. Johnson, 302 F.3d 139, 150 (3d Cir. 2002) (quoting United States v. Santos, 20 F.3d 280, 285 (7th Cir. 1994)).  When assessing whether or not a new trial should be granted on the basis that the verdict was against the weight of the evidence rather than viewing the evidence in the light most favorable to the government, the district court is obligated to employ its independent judgment.  Johnson, 302 F.3d at 150 (3d Cir. 2002); United States v. David, 222 Fed. Appx. 210, 215 (3d Cir. 2007).  "If there is substantial evidence to support the jury's determination, [a court] will 'not disturb the verdict although on that evidence [the court] might not have made the same decision.'"  United States v. McKee, 506 F.3d 225, 232-33 (3d Cir. 2007) (quoting United States v. Cooper, 121 F.3d 130, 133 (3d Cir. 1997)).  Thus, the "inquiry is limited to determining whether the jury's verdict is permissible."  Id. (citing United States v. McGill, 964 F.2d 222, 229 (3d Cir. 1992)).

Here, the Defendant is not entitled to a new trial.  The Defendant claims that the Government failed to put forth sufficient evidence of willfulness to sustain a guilty verdict on Counts 8, 9, and 10.  As the Third Circuit has explained, "the element of willfulness protects the average citizen from criminal prosecution for innocent mistakes in filing tax forms that may result from nothing more than negligence or the complexity of the tax laws."  McKee, 506 F.3d at 236.  "Willfulness requires the voluntary, intentional violation of a known legal duty as a

condition precedent to criminal liability." Id. (citing Cheek v. United States, 498 U.S. 192 (1991)).  In determining whether willfulness has been sufficiently established, a court should consider the "totality of the evidence." Id.  Here, abundant evidence of the Defendant's willfulness was presented to the jury.

At trial, the Defendant admitted that he did not file returns for the tax years 2002, 2003, and 2004.  (Trial Tr. 66:9-67-8, 91:19-93:6, Feb. 14, 2008.)  However, the Defendant argues that because he presented a defense based on the Paperwork Reduction Act, and because the Government failed to rebut that defense, the Government has not sustained its burden.  The basis for the Defendant's Paperwork Reduction Act defense is discussed above.  The Defendant was careful to explain that he did not believe that the federal income tax was illegal.  When asked if he believed that the "[f]ederal income tax is illegal," the Defendant responded, "No, I ain't saying that."  (Id. 87:12-14.)  The Defendant clarified his position: "So, in your form, your IRS form, you said, if it doesn't have a valid OMB control number, you're not required to respond to the information. So my question was, if I'm not required to file, then how can you prosecute me for information that I wasn't required to file . . . ."  (Id. 90:12-16.)  When asked if his failure to file was intentional, the Defendant said that he "was in a state of un-surety, . . . a state of confusion."  (Id. 91:7-11.)  A jury is free to discredit a defendant's claim of a good faith belief. Cheek, 498 U.S. at 202.  A jury is free "to consider any admissible evidence from any source showing that [the defendant] was aware of his duty to file a return and to treat wages as income." Id.  Here the jury did discredit the Defendant's claimed good faith belief.

According to defense counsel, the above referenced testimony was the only evidence presented regarding willfulness, (Def.'s Mot. 6.); however, defense counsel overlooks the

16

Defendant's own incriminating testimony. On direct examination, the Defendant was asked, "[W]hat is your understanding of your responsibility to pay income tax?" (Trial Tr. 44:24-25, Feb. 14, 2008.) The Defendant responded, "Well, my understanding is you file and you pay income taxes." (Id. 45:1-2.) The Defendant then explained what he did for certain years to "compl[y] with this responsibility." (Id. 45:5.) In addition, the Defendant testified that, for at least certain periods of time, he admitted that he owed the IRS taxes. (Id. 65:7-66:5.) The Defendant specifically stated, "Am I denying that I owe the IRS? . . . No, I never denied that." (Id. 65:10-12.) Thus, while the Defendant argues that he had no duty to file IRS Form 1040A, he appears to have specifically admitted that he knew he had a duty to pay taxes.

The Government presented other evidence supporting the Defendant's willful failure to file. The Government presented evidence of a pattern of filing and then not filing. See United States v. Fingado, 934 F.2d 1163, 1168 (10th Cir. 1991). The Defendant testified that he worked with his accountant to file his taxes from around 1995 or 1996 until 2001. (Trial Tr. 45:3-15, 65:7-66:5, Feb. 14, 2008.) But beginning with the 2002 tax year, the Defendant began instructing his accountant to refrain from filing his taxes, at least until the Defendant finished with his "research." (Id. 85:2-16.) The Defendant admitted to a pattern of not filing his taxes for three years. See United States v. Greenlee, 517 F.2d 899, 903 (3d Cir. 1975) (holding that "a two year pattern of derelictions in fulfilling defendant's obligation to make timely returns [was] itself indicative of the willfulness of his actions"). In addition, the Defendant testified that he and his accountant negotiated an installment agreement with the IRS regarding previous filings. (Trial Tr. 100:23-101:17, Feb. 14, 2008.) We fully agree with the jury's determination that the Defendant willfully failed to file returns for the tax years 2002, 2003, and 2004. As such, it

cannot be said that there was a miscarriage of justice. Defendant's motion for a new trial based upon the verdict being against the weight of the evidence is denied.